UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JACK FISCHER,

               Plaintiffs,                            Case No. 1:19-cv-13020

v.                                          Honorable Thomas L. Ludington
                                                United States District Judge

UNITED STATES OF AMERICA,

               Defendant.

_____/

## ORDER DENYING PLAINTIFF'S FIRST AND SECOND MOTIONS IN LIMINE AND DEFENDANT'S FIRST MOTION IN LIMINE, AND GRANTING DEFENDANT'S SECOND MOTION IN LIMINE

Plaintiff Jack Fischer and Defendant the United States (the "Government") have both filed motions in limine. ECF No. 35 (Pl.'s Mot. in Lim. to Permit Pl. to Argue Michigan Vehicle Codes are Applicable); ECF No. 36 (Pl.'s Mot. in Lim. to Preclude Def.'s Expert from Testifying about Fault); ECF No. 37 (Def.'s Mot. in Lim. Concerning Michigan Vehicle Code); ECF No. 38 (Def.'s Mot. in Lim. to Qualify Expert). For the reasons stated hereafter, Plaintiff's motions, ECF Nos. 35; 36, will be denied; the Government's first motion, ECF No. 37, will be denied; and the Government's second motion, ECF No. 38, will be granted.

### I.

This case arises from a relatively routine "approach-from-the-rear daylight collision" set of events: here, with the Government's postal truck being overtaken by Plaintiff's motorcycle.

The driver of the postal truck ("Patton") testified that he braked almost to a stop slightly over the center of the roadway to turn left while signaling and using his mirrors to watch behind his vehicle. Patton explains that he neither saw nor heard any automobile or warning signal from the rear but halted when something suddenly caught his eye in the side-view mirror. As Patton

braked and turned left, Plaintiff accelerated to pass in the left lane, but the right pedal of his motorcycle hooked the back of the postal truck's front-left bumper.

Plaintiff lost control and crashed. Suffering life-threatening injuries, he was medevaced from the scene of the accident.

Eighteen days later, Plaintiff brought this case under the Federal Tort Claims Act (FTCA), which states, with exceptions not applicable here, that the Government is liable for:

> personal injury . . . caused by the negligent . . . act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

In April 2021, the Government filed a motion for summary judgment, which Judge Friedman denied on June 1, 2021. *See* ECF No. 30. Twenty-three days into the case, one of Judge Friedman's former law clerks, Assistant United States Attorney Benjamin A. Anchill, filed a notice of appearance to represent the Government. ECF No. 31. Judge Friedman recused himself the next day under 28 U.S.C. § 455(a), reassigning the case to this Court. ECF No. 32. On August 31, 2021, both parties filed two motions in limine. ECF Nos. 35; 36; 37; 38.

As Michigan is the *loci delicti commissi*, Michigan law determines the extent of the parties' liabilities. 28 U.S.C. § 1346(b)(1); *Premo v. United States*, 599 F.3d 540, 545 (6th Cir. 2010); *Young v. United States*, 71 F.3d 1238, 1242 (6th Cir. 1995); *see also* Amie L. Medley, Note, *A Sea of Confusion: The Shipowner's Limitation of Liability Act as an Independent Basis for Admiralty Jurisdiction*, 108 MICH. L. REV. 229, 254 n.87 (2009) ("The traditional rule of lex loci delicti requires that the law of the jurisdiction where the wrong occurred be applied." (citing BLACK'S LAW DICTIONARY 930 (8th ed. 2004)).

## II.

Plaintiff contends that Patton's negligence caused his injuries; the Government contends that Plaintiff's own negligence caused his injuries. To that end, Plaintiff's first motion in limine argues that Michigan Compiled Laws § 257.636(1)(a) and 257.638(1) establish Plaintiff's duty and that Michigan Compiled Laws § 257.636(1)(b), 257.642(1)(a), and 257.648(1) establish Patton's duty. *See* ECF No. 35 at PageID.443–46. By contrast, the Government's first motion in limine argues that "[Patton] had the right of way" because Plaintiff violated Michigan Compiled Laws § 257.627, 257.643, and 257.638. ECF No. 37 at PageID.661, 672

## A.

The seven provisions identified by the parties read as follows:

A person operating a vehicle on a highway shall operate that vehicle at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface, and width of the highway and of any other condition existing at the time. A person shall not operate a vehicle upon a highway at a speed greater than that which will permit a stop within the assured, clear distance ahead. A violation of this subsection shall be known and may be referred to as a violation of the basic speed law or "VBSL".

MICH. COMP. LAWS § 257.627.

The driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass at a safe distance to the left of that vehicle, and when safely clear of the overtaken vehicle shall take up a position as near the right-hand edge of the main traveled portion of the highway as is practicable.

MICH. COMP. LAWS § 257.636(1)(a).

Except when overtaking and passing on the right is permitted, the driver of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle and shall not increase the speed of his or her vehicle until completely passed by the overtaking vehicle.

MICH. COMP. LAWS § 257.636(1)(b).

A vehicle shall not be driven to the left side of the center of a 2-lane highway or in the center lane of a 3-lane highway in overtaking and passing another vehicle

proceeding in the same direction unless the left side or center lane is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit the overtaking and passing to be completely made without interfering with the safe operation of a vehicle approaching from the opposite direction or the vehicle overtaken.

MICH. COMP. LAWS § 257.638(1).

When a roadway has been divided into 2 or more clearly marked lanes for traffic . . . [a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the operator has first ascertained that the movement can be made with safety. Upon a roadway with 4 or more lanes that provides for 2-way movement of traffic, a vehicle shall be operated within the extreme right-hand lane except when overtaking and passing, but shall not cross the center line of the roadway except where making a left turn.

MICH. COMP. LAWS § 257.642(1)(a).

The operator of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of the vehicles and the traffic upon and the condition of the highway.

MICH. COMP. LAWS § 257.643.

The operator of a vehicle or bicycle upon a highway, before stopping or turning from a direct line, shall first determine that the stopping or turning can be made in safety and shall give a signal as required in this section. . . . [A] signal required under this section shall be given either by means of the hand and arm in the manner specified in this section, or by a mechanical or electrical signal device that conveys an intelligible signal or warning to other highway traffic.

MICH. COMP. LAWS § 257.648(1)–(2).

All seven provisions apply, to some extent, to the factual predicament in this case. *United States v. Dedman*, 527 F.3d 577, 587 (6th Cir. 2008) ("[S]tate law is simply a matter for the judge to determine."). They are all rules of the road that set forth standards of care for stopping, turning, changing lanes, following, passing, or some combination of them. *See, e.g.*, *Gerardi v. Walters*, No. 318233, 2015 WL 213240, at *5 (Mich. Ct. App. Jan. 15, 2015) ("A tangle of statutes within the Motor Vehicle Code, MCL 257.1 *et seq.*, address the standard of care expected of [defendant] under the circumstances presented in this case.").

- 4 -

**B.**

Although none of the seven statutes address their priority in relation to each other, the Michigan Supreme Court, sitting en banc, has addressed the issue as relevant in this case. *See Hoffman v. Burkhead*, 90 N.W.2d 498 (Mich. 1958) (en banc); *see also Carll v. Ware*, No. 1:96-CV-173, 1997 WL 269489 (W.D. Mich. Apr. 14, 1997) (holding that a turning driver "did not have a duty to check his mirrors immediately prior to turning left to observe if another vehicle was unlawfully passing him," because "a turning driver's attention is not best focused behind him"); *People v. Hrlic*, 744 N.W.2d 221 (Mich. Ct. App. 2007) (per curiam) ("[T]he purpose of [Michigan Compiled Laws § 257.648] is to provide notice of movements along the route that could affect other motorists.").

In *Hoffman*, a trailing ambulance attempted to pass a car on the left and collided with the car as it slowly turned left into a driveway. 90 N.W.2d at 499–500. The only notable distinction between *Hoffman* and this case is that the roles were reversed: in *Hoffman*, the plaintiff drove the left-turning car in front, and the defendant drove the trailing ambulance and attempted to pass.

The *Hoffman* court focused on the forward vehicle's brake light. Interpreting Michigan Compiled Laws § 257.648, the *Hoffman* court sought to answer the question, "Did the plaintiff give an adequate signal?" *Id.* at 500. The *Hoffman* plaintiff testified that he activated his brake lights by depressing his brake pedal. *Id.* Like Plaintiff in this case, the plaintiff in *Hoffman*, "on his own testimony, did not first see that he could make the turn in safety." *Id.* at 501. *Compare* ECF No. 35 at PageID.441 (Pl.'s Mot. in Lim.) ("As Fischer was following Patton, Patton's mail truck slowed down to approximately 3mph as it approached some mailboxes on the right."), *and id.* ("Plaintiff Fischer thought that Patton was stopping at the mailboxes and he proceeded to pass

Patton on the left."), *with* ECF No. 36 at PageID.459 (Pl.'s Mot. in Lim.) ("Fischer also testified that he did not see the postal truck's brake lights.").

The same question is central to this case. Indeed, Michigan Compiled Laws § 257.648(2) provides that "a *signal* required under this section shall be given either by means of the hand and arm in the manner specified in this section, or *by a mechanical or electrical signal device that conveys an intelligible signal or warning to other highway traffic*." MICH. COMP. LAWS § 257.648(2) (emphases added).

In *Hoffman*, the en banc Michigan Supreme Court held that under Michigan Compiled Laws § 257.648(2) "timely blinking his rear red lights . . . signalled an intention at least to *do something*. . . . [raising] a fair inference . . . that he has performed his statutory duty and that any approaching driver was put on warning." *Hoffman*, 90 N.W.2d at 503 (emphasis in original).

Because Michigan courts resolved the priority of the Michigan statutes that Plaintiff has presented in his first motion in limine, ECF No. 35, it will be denied.

## C.

Notwithstanding the priority of the statutes, at least one genuine issue of material fact remains, warranting denial of the Government's first motion in limine regarding the Michigan Vehicle Codes, ECF No. 37.

The Government contends that "[a]s a matter of law, the postal driver in this case had the right of way." ECF No. 37 at PageID.650. For this reason, the Government aims "to prevent [P]laintiff from introducing any evidence to the contrary." *Id.* But "[j]udgment as a matter of law is [not] appropriate when[,] 'viewing the evidence in the light most favorable to the non-moving party, there is [a] genuine issue of material fact for the jury.'" *Jordan v. City of Cleveland*, 464 F.3d 584, 594 (6th Cir. 2006) (quoting *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir.

2004)); *see also Rivet v. State Farm Mut. Auto. Ins.*, No. CIVA 04-CV-72333-DT, 2006 WL 1738036, at *2–3 (E.D. Mich. June 16, 2006) (Friedman, J.) (same).

It is undisputed that Patton was braking before he began to turn. Patton stated that he was slowing down to turn left. *See* ECF No. 35 at PageID.441 (Pl.'s Mot. in Lim.) ("As Fischer was following Patton, Patton's mail truck slowed down to approximately 3mph as it approached some mailboxes on the right."). And Plaintiff conceded that he saw the postal truck braking before he attempted to pass it. *See* ECF No. 35 at PageID.441 ("Plaintiff Fischer thought that Patton was stopping at the mailboxes and he proceeded to pass Patton on the left."). Patton also testified that his brake lights were properly operating before and after the accident. ECF No. 36-3 at PageID.500 ("According to the other person that was in the parking lot when I asked if they would tell me if my brake light were working and my flashers were working and if my turn signals were working, yes."); *id.* at PageID.501. Moreover, Plaintiff testified that, from the rear, he saw blinking yellow lights on the postal truck. *See* ECF No. 27-2 at PageID.319.

Fatal to the Government's first motion in limine, however, Plaintiff has testified that he did not see the postal truck's brake lights. *See* ECF No. 36 at PageID.459 (Pl.'s Mot. in Lim.) ("Fischer also testified that he did not see the postal truck's brake lights.").

As indicated, a question of fact remains for the trier of fact regarding whether the brake light was illuminated while Plaintiff was behind the postal truck and watching it slow down. For this reason, the Government's first motion in limine, ECF No. 37, will be denied.

## III.

The Government emphasizes Plaintiff's negligence. To that end, the Government has filed a motion in limine to "certify" Sheriff Ramirez "as an accident reconstruction expert pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579

(1993)." *See* ECF No. 38. In contest, Plaintiff has filed a motion in limine to "preclude Defendant from eliciting expert and/or lay testimony from Tuscola County Deputy Sheriff Ramirez concerning the issue of fault with respect to the at-issue accident" under Federal Rules of Evidence 701 and 702. ECF No. 36 at PageID.474.

### A.

The Federal Rules of Evidence govern the admissibility of expert testimony in this case. Michigan Rule of Evidence 702 mirrors Federal Rule of Evidence 702. MICH. R. EVID. 704, staff comment to 1978 adoption; *Bednarsh v. Berghuis*, No. 1:10-CV-303, 2012 WL 5265952, at *11 (W.D. Mich. May 18, 2012), *objections overruled*, No. 1:10-CV-303, 2012 WL 5265942 (W.D. Mich. Oct. 23, 2012).

Because both rules "answer the same question," this Court must apply Federal Rule of Evidence 702 to determine whether Sheriff Ramirez is qualified to testify as an accident-reconstruction expert. *Gallivan v. United States*, 943 F.3d 291, 293 (6th Cir. 2019) (holding that in FTCA cases courts must apply federal rules rather than state rules if they "answer 'the same question.'" (quoting *Shady Grove Orthopedic Assocs. v. Allstate Ins.*, 559 U.S. 393, 398 (2010))); *cf. Campbell v. United States*, No. CV 19-12383, 2020 WL 9349618, at *5–7 (E.D. Mich. Nov. 23, 2020) (holding that the Michigan Rules of Evidence apply to medical expert testimony in FTCA cases, because Federal Rule of Evidence 702 answers "qualification" and Michigan Compiled Laws § 600.2169 answers "competency").

The *Daubert* standard determines the admissibility of Sheriff Ramirez's expert testimony. In *Daubert*, the Supreme Court identified a non-exhaustive list of factors to assess the reliability of expert testimony. 509 U.S. at 593–97. The factors are (1) whether a theory or technique can be and has been tested, (2) whether the theory or technique has been subjected to peer review and

publication, (3) whether, with respect to a particular technique, there is a high known or potential rate of error and whether there are standards controlling the technique's operation, and (4) whether the technique enjoys general acceptance within the relevant scientific, technical, or other specialized community. *Id.* at 592–94.

Rule 702 does not require an expert to have absolute certainty in formulating his opinion. Indeed, "experts are permitted wide latitude in their opinions, including those not based on firsthand knowledge, so long as the 'expert's opinion [has] a reliable basis in the knowledge and experience of the discipline.'" *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 388 (6th Cir. 2000) (quoting *Daubert*, 509 U.S. at 592). "[A] trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The Sixth Circuit has overwhelmingly found that district courts abuse their discretion when they preclude accident-reconstruction experts from providing expert testimony. *See, e.g.*, *Dilts v. United Grp. Servs., LLC*, 500 F. App'x 440, 445–46 (6th Cir. 2012) (Clay, J.) (unpublished); *Clay v. Ford Motor Co.*, 215 F.3d 663, 668 (6th Cir. 2000) (Gibson, J.).

Sheriff Ramirez meets the standards outlined in Rule 702. He responded to automobile collisions as a road deputy for over eight years and has been employed with the Tuscola County Sheriff's Department for over one year as an accident reconstructionist. *See* ECF Nos. 38 at PageID.949, 951; 38-2 at PageID.960. His duties as a road deputy include crash investigation and enforcement of Michigan's vehicle codes, and he investigated over 24 automobile collisions as an apprentice reconstructionist. ECF No. 38 at PageID.949–50. Although he "was not certified as an accident reconstruction expert at the time of the accident, he has since become" certified. *Id.* at PageID.947, 949; ECF No. 38-3 at PageID.990.

In addition, Plaintiff's expert has conceded that Sheriff Ramirez has substantially similar training and credentials. ECF Nos. 38 at PageID.947; 38-3 at PageID.990; 38-4 at PageID.1004. Moreover, Sherriff Ramirez formed his opinions based on his on-scene investigation of the accident, during which he interviewed both drivers, examined both vehicles, and considered evidence on the roadway. *See, e.g.*, ECF No. 38-2 at PageID.961. And he "testified that none of his subsequent accident reconstruction training or certifications would lead him to change his opinion." ECF No. 38 at PageID.952.

Assuming the Government establishes a proper foundation at trial, Sheriff Ramirez qualifies as an expert due to his training and qualifications in accident investigation, as well as his reliance on the physical evidence at the scene. For those reasons, Sheriff Ramirez is qualified to testify as an expert on accident reconstructions and as an expert on automobile collisions. Accordingly, the Government's motion in limine to qualify Sheriff Ramirez as an expert, ECF No. 38, will be granted, and Plaintiff's motion to the contrary, ECF No. 36, will be denied.

## B.

Plaintiff has cited *Miller v. Hensley*, 624 N.W.2d 582, 584 (Mich. Ct. App. 2001), for the proposition that Sheriff Ramirez may not provide lay testimony about fault. ECF No. 36 at PageID.468. But the Federal Rules of Evidence control Sheriff Ramirez's lay testimony. Moreover, Plaintiff misreads *Miller*.

In *Miller*, the Michigan Court of Appeals found that the responding officers could not offer lay testimony about fault because the officers' conclusions "were based *solely* on statements made by witnesses at the accident scene." 624 N.W.2d at 584 (emphasis added). By contrast, Sheriff Ramirez based his conclusion of causation on both parties' statements *and* his personal examination of the accident scene. *See, e.g.*, ECF No. 38-2 at PageID.961–62. He personally

investigated the marks on the roadway, the point of collision, and the damage and position of the postal truck and the motorcycle. *Id.* In this way, *Miller* is inapposite. Even so, *Miller* acknowledges that Michigan courts mostly admit "lay opinion testimony from investigating officers regarding fault in traffic accidents when the testimony was the result of direct observations and analysis of the accident scene." 624 N.W.2d at 584 (collecting cases).

Sheriff Ramirez may offer lay testimony about causation. Indeed, officers who respond to traffic accidents generally determine causation for the benefit of the parties and their insurance companies. *See* Ed Leefeldt & Amy Danise, *The Tricky Business of Determining Fault After a Car Accident*, FORBES (Oct. 21, 2020, 7:00 PM), https://www.forbes.com/advisor/car-insurance/determining-fault-after-accident/ [https://perma.cc/DJ8B-E3H] ("[A]n officer's . . . . second [job] is to assess the scene[, which] often makes it clear as to who actually is at fault. . . . Bear in mind that a police report is not infallible. But it is a public document that auto insurance companies will undoubtedly read.").

Granted, federal courts generally exclude investigating officers' *lay* testimony about fault. *See, e.g.*, *Baxter v. Anderson*, No. 3:16-CV-142, 2018 WL 1959596, at *2 (M.D. La. Jan. 25, 2018); *Glass v. Mecham*, No. CIV-11-1267-C, 2014 WL 12042517, at *1 (W.D. Okla. July 2, 2014); *Massa v. Schleeter*, No. 3:13CV1132, 2014 WL 546829, at *1 (N.D. Ohio Feb. 10, 2014). *But see Robert v. Maurice*, No. CV 18-11632, 2020 WL 4043097, at *5 (E.D. La. July 17, 2020) (suggesting investigating officers may "provide an opinion as to the cause of the accident" if they did "witness the accident and" and have "been designated as an expert witness"). But those courts excluded the officers' lay testimony for worry of prejudicing the jury with testimony from police officers, as jurors generally consider such testimony to be objective. This case will be bench tried.

Sheriff Ramirez can testify to his assessments of fact. He is an automobile-collision expert, an accident-reconstruction expert, and the investigating officer. *See supra* Section III.A; *Numatics, Inc. v. Balluff, Inc.*, 66 F. Supp. 3d 934, 944 (E.D. Mich. 2014) ("An expert may testify to the facts supporting a legal conclusion without testifying about the ultimate legal conclusion." (citing *High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301, 1313 (Fed. Cir. 2013))).

Whether someone acted negligently is a legal conclusion; the factual cause of a traffic accident is not. *See Shahid v. City of Detroit*, 889 F.2d 1543, 1547–48 (6th Cir. 1989) (holding that testimony "that certain behavior by [defendants] amounts to negligence under the law" is tantamount to "'instruct[ing] the jury as to applicable principles of law,'" which is for the judge to instruct (quoting *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 509–10 (2d Cir. 1977)); *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 239–40 (5th Cir. 1983) (holding that the question "do you have any opinion as to the cause of the accident?" sought a legal conclusion, because "there was no dispute in the evidence as to the factual cause of the mishap"); *cf. Haney v. Mizell Mem'l Hosp.*, 744 F.2d 1467, 1479 (11th Cir. 1984) ("The jury also could have reasonably concluded that Haney's own conduct was the cause of his disability.").[1]

---

[1] In *Davis v. Baugh Industrial Contractors, Inc.*, 150 P.3d 545 (Wash. 2007) (en banc), the Washington Supreme Court concluded that an expert's testimony that part of a construction site was "hazardous" and created a "zone of danger" was not a legal conclusion about negligence. The court explained:

> Expert testimony must assist the trier of fact. Mere legal conclusions, such that an act was or was not "negligent" or a "proximate cause" of an injury is not likely to be helpful to the meaningful evaluation of the facts, as it runs the risk of substituting the expert's judgment for the fact finder's. However, Washington law favors resolution of issues on the merits. It should not be fatal to a party's claim or defense that an expert used legal jargon, so long as an appropriate foundation for the conclusion can be gleaned from the testimony. Expert opinions that help establish the elements of negligence are admissible.

*Id.* at 548. Washington Rule of Evidence 704 is verbatim identical to Michigan Rule of Evidence 704, which "is identical with Rule 704 of the Federal Rules of Evidence." MICH. R. EVID. 704, staff comment to 1978 adoption. In this way, the same reasoning applies by analogy to this case.

Here, there is a factual dispute as to the cause of the accident. *See supra* Section II.C. Therefore, Sheriff Ramirez's opinion of factual causation would merely be an assessment of fact based on his expertise, not a legal conclusion or an amalgamated conclusion of law and fact.

In sum, because there is a dispute as to the factual cause of the accident, Sherriff Ramirez's testimony would be about the *factual cause* of the accident, not about which party was negligent. For this reason, the trier of fact will determine the credibility and weight of Sheriff Ramirez's testimony about factual causation. FED. R. EVID. 702. Consequently, Plaintiff's motion to exclude Sheriff Ramirez's expert testimony will be denied, and the Government's motion to the contrary will be granted.

## IV.

Accordingly, it is **ORDERED** that Plaintiff's Motion to Permit Plaintiff to Argue That MCL 257.636, MCL 257.638, MCL 257.642, MCL 257.648 Are All Applicable in Order to Determine Fault for the At-Issue Accident in This Case, ECF No. 35, is **DENIED**.

Further, it is **ORDERED** that the Government's Motion Concerning Michigan Vehicle Code, ECF No. 37, is **DENIED**.

Further, it is **ORDERED** that Plaintiff's Motion to Preclude Tuscola County Deputy Sheriff Jonathon Ramirez from Testifying as to the Issue of Fault for the At-Issue Accident in This Case, ECF No. 36, is **DENIED**.

Further, it is **ORDERED** that the Government's Motion to Qualify Tuscola County Deputy Sheriff Jonathon Ramirez as an Accident Reconstruction Expert, ECF No. 38, is **GRANTED**.

Dated: January 4, 2022                       s/Thomas L. Ludington
                                           THOMAS L. LUDINGTON
                                           United States District Judge