UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JACK FISCHER,

       Plaintiff,                               Case No. 1:19-cv-13020

v.                                                 Honorable Thomas L. Ludington
                                                        United States District Judge

UNITED STATES OF AMERICA,

       Defendant.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE POLICE REPORT AND GRANTING PLAINTIFF'S MOTION TO ALLOW OPINION WITNESS TO TESTIFY REMOTELY**

Plaintiff has filed a motion in limine to exclude a traffic-crash report made by the officer who responded to the traffic accident underlying this Federal Tort Claims Act action. The motion to exclude will be denied with prejudice.

Plaintiff has also filed a motion to allow his opinion witness, Roger Allen, to testify remotely via Zoom videoconferencing. The motion for remote testimony will be granted.

**I.**

This case arises from a relatively routine "approach-from-the-rear daylight collision" set of events: here, with the Government's postal truck being overtaken by Plaintiff's motorcycle.

The driver of the postal truck ("Patton") testified that he braked almost to a stop slightly over the center of the roadway to turn left while signaling and using his mirrors to watch behind his vehicle. *Fischer v. United States*, No. 1:19-CV-13020, 2022 WL 36418, at *1 (E.D. Mich. Jan. 4, 2022). Patton explains that he neither saw nor heard an automobile or warning signal from the rear but halted when something suddenly caught his eye in the side-view mirror. *Id.* As Patton

braked and turned left, Plaintiff accelerated to pass in the left lane, but the right pedal of his motorcycle hooked the back of the postal truck's front-left bumper. *Id.*

Plaintiff acknowledges slowing yet denies seeing Patton's brake lights. ECF No. 35 at PageID.441 ("As Fischer was following Patton, Patton's mail truck slowed down to approximately 3mph as it approached some mailboxes on the right."). Plaintiff has, however, conceded that he saw Patton's truck braking before he attempted to pass it. *Id.* ("Plaintiff Fischer thought that Patton was stopping at the mailboxes and he proceeded to pass Patton on the left."). Moreover, Plaintiff testified that, from the rear, he saw blinking yellow lights on Patton's truck. *See* ECF No. 27-2 at PageID.319.[1]

Plaintiff lost control and crashed. Suffering life-threatening injuries, he was medevaced from the scene of the accident. *Fischer*, 2022 WL 36418, at *1. Tuscola County Deputy Sheriff Jonathon G. Ramirez responded to the September 27, 2017 accident, took the parties' statements, and found Plaintiff "at fault." ECF Nos. 27 at PageID.298–300; 54-2 at PageID.1381.

Eighteen days later, Plaintiff brought this case under the Federal Tort Claims Act (FTCA), which states, with exceptions not applicable here, that the Government is liable for:

> personal injury . . . caused by the negligent . . . act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

---

[1] In *Hoffman v. Burkhead*, the en banc Michigan Supreme Court held that under Michigan Compiled Laws § 257.648(2) a driver who "timely blink[s] his rear red lights" has "signalled an intention *to do something* . . . [raising] a fair inference . . . that he has performed his statutory duty and that any approaching driver was put on warning." *Hoffman*, 90 N.W.2d 498, 503 (Mich. 1958) (emphasis added).

In April 2021, the Government filed a motion for summary judgment, which United States District Judge Bernard A. Friedman denied on June 1, 2021. *See* ECF No. 30. Twenty-three days into the case, one of Judge Friedman's former law clerks, Assistant United States Attorney Benjamin A. Anchill, filed a notice of appearance to represent the Government. ECF No. 31. Judge Friedman recused himself the next day under 28 U.S.C. § 455(a), reassigning the case to the undersigned. ECF No. 32.

A bench trial before the undersigned is scheduled to begin on June 28, 2021. ECF No. 49. On June 13, 2021, Plaintiff filed the instant Motion in Limine,[2] which seeks to exclude Officer Ramirez's police report from the trial. ECF No. 54. Plaintiff has also filed a motion requesting that Plaintiff's opinion witness Roger Allen may testify remotely via Zoom videoconferencing. ECF No. 56.

As Michigan is the *loci delicti commissi*, Michigan law determines the extent of the parties' liabilities. 28 U.S.C. § 1346(b)(1); *Premo v. United States*, 599 F.3d 540, 545 (6th Cir. 2010); *Young v. United States*, 71 F.3d 1238, 1242 (6th Cir. 1995); *see also* Amie L. Medley, Note, *A Sea of Confusion: The Shipowner's Limitation of Liability Act as an Independent Basis for Admiralty Jurisdiction*, 108 MICH. L. REV. 229, 254 n.87 (2009) ("The traditional rule of lex loci delicti requires that the law of the jurisdiction where the wrong occurred be applied." (citing BLACK'S LAW DICTIONARY 930 (8th ed. 2004)).

---

[2] For a discussion of how trial courts may conditionally grant a motion in limine, leaving the underlying evidentiary issue open to be revisited at trial, see *The Modern Workplace: Contemporary Legal Issues in Employment & Labor Law Local Panel Discussion*, 6 BELMONT L. REV. 245, 261–62 (2019) (statement of Ann Steiner) (citing *Rothberg v. Cincinnati Ins.*, No. 1:06-CV-111, 2008 WL 2401190, at *2 (E.D. Tenn. June 11, 2008)).

II.

A.

Plaintiff's motion in limine will be denied because Deputy Ramirez's police report is admissible.

1.

Plaintiff first "requests that the Court enter an Order Granting Plaintiff's Motion in Limine to Exclude the UD-10 Michigan Traffic Crash Report as evidence at Trial." ECF No. 54 at PageID.1373. According to Plaintiff's one-page analysis, the crash report is inadmissible under Michigan Compiled Laws § 257.624. *Id.* at PageID.1377 (first citing *Green v. City of Southfield*, No. 15-13479, 2018 U.S. Dist. LEXIS 37111, at *13–14 (E.D. Mich. Mar. 7, 2018); and then citing *Malburg v. Grate*, No. 11-14856, 2014 U.S. Dist. LEXIS 86877, at *18–20 (E.D. Mich. June 26, 2014)).

The Government responds that the police report is admissible under the Federal Rules of Evidence. ECF No. 57 at PageID.1387. First, the Government argues that the Federal Rules of Evidence govern the admissibility of the police report, not the Michigan Rules of Evidence. *Id.* The Government adds that the police report would be admissible under Michigan Compiled Laws § 257.624. *Id.* at PageID.1388–89 (first citing *Weinstein v. Siemens*, No. 2:07-CV-15000, 2010 WL 4824952, at *7–8 (E.D. Mich. Nov. 22, 2010); and then citing *Willmore v. Hertz Corp.*, 322 F. Supp. 444, 447 (W.D. Mich. 1969)). Finally, the Government reasons that the police report is relevant, *id.* at PageID.1387, and that it "is not inadmissible hearsay," *id.* at PageID.1389–90.

Apart from general information about the drivers and the time and location of the accident, Deputy Ramirez's entire "[n]arrative" reads as follows:

> Vehicle 2 was a mail carrier vehicle with a registration number of 0239423 and as a government vehicle is self-insured. V2 was traveling east on Truax Rd

approximately ½ mile east of Reese Rd when it signaled a left hand turn into a residence to deliver a package. Driver of V2 stated he check his mirrors prior to making his turn into the residence. As V2 started its turn into the driveway, V1 also traveling east bound, crossed the center line in an attempt to go around the mail vehicle. Driver of V1 had noticed that V2 was slowing but thought he was delivering mail to the mailbox. The sun was at the back of both operators and may have partially illuminated the blinker enough that it was not easily visible to V1. Driver of V1 stated he did not see the blinker until he was beside V2. V1 tried giving the motorcycle throttle to go around V2 but lost control when he entered the gravel driveway. This caused him to be thrown from the bike. The driver sustained severe injuries but was wearing a proper helmet securely and it was nearly thrown off from the impact. The motorcycle struck a small tree and came to rest near a telephone pole. Driver of V1 was transported to St. Marys Hospital via Flight Care. The driver of V2 was uninjured.

ECF No. 54-2 at PageID.1380–81.

**2.**

The Federal Rules of Evidence govern the admissibility of Deputy Ramirez's UD-10 Michigan Traffic Crash Report.

In FTCA cases, if a state and federal rule of evidence "answer the same question," then the court must apply the federal rule. *See Fischer v. United States*, No. 1:19-CV-13020, 2022 WL 36418, at *5 (E.D. Mich. Jan. 4, 2022) (quoting *Gallivan v. United States*, 943 F.3d 291, 293 (6th Cir. 2019)); *accord Pledger v. Lynch*, 5 F.4th 511, 518–19 (4th Cir. 2021). The reviewing court should fairly construe the federal rule, which should control if it is "broad enough either to 'implicitly . . . control' the same issue addressed by state law or to cause a direct conflict with that law." *Pledger*, 5 F.4th at 522 (quoting *Burlington N. R.R. v. Woods*, 480 U.S. 1, 4–5 (1987)).

Federal Rule of Evidence 803(6) is not fully consistent with Michigan Compiled Laws § 257.624 or Michigan Rule of Evidence 803(6). Mich. R. Evid. 803 staff's comment to 1978 adoption ("MRE 803(8) is identical with Federal Rule 803(8) except for the addition to clause (B) of the phrase 'and subject to the limitations of MCL 257.624,' and the deletion of the following language: 'or (C) in civil actions and proceedings and against the Government in criminal cases,

factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.'").

But they all answer the "same question" in dispute: "Is a police report admissible evidence at trial?" For this reason, the Federal Rules, not the Michigan Rules, govern the admissibility of Deputy Ramirez's police report. *See Gallivan*, 943 F.3d at 293–94; *Pledger*, 5 F.4th at 519.

### 3.

Under Federal Rule of Evidence 401, "evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Unless expressly prescribed by another evidential rule, relevant evidence is admissible. FED. R. EVID. 402; *Frye v. CSX Transp., Inc.*, 933 F. 3d 591, 599 (6th Cir. 2019).

Deputy Ramirez's police report is relevant because it makes it more probable that Plaintiff was at fault for the accident, the central question at issue in this liability-only phase of the case.

Under Rule 403, "a trial court may exclude relevant evidence if its probative value is substantially outweighed by the risk of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time[,] or needless presenting cumulative evidence." FED. R. EVID. 403. "Much of the Federal Rules of Evidence is devoted to protecting parties from the introduction of unfairly prejudicial evidence." Jesse Schupack, Note, *The Liar's Mark: Character and Forfeiture in Federal Rule of Evidence 609(a)(2)*, 119 MICH. L. REV. 1031, 1035 (2021). But evidence is not excluded as unfairly prejudicial merely because it is damaging to the party against whom it is offered. Rather, "unfair prejudice" under Rule 403, "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (citation omitted).

Plaintiff has not advanced any argument as to how the prejudicial effect of the police report or the statements therein might substantially outweigh the probative value. *See* FED. R. EVID. 403.

Granted, federal courts generally exclude investigating officers' *lay* testimony about fault to avoid prejudicing the jury with testimony from law enforcement, which jurors generally consider to be objective. *Fischer v. United States*, No. 1:19-CV-13020, 2022 WL 36418, at *6 (E.D. Mich. Jan. 4, 2022) (collecting cases). *But see Robert v. Maurice*, No. CV 18-11632, 2020 WL 4043097, at *5 (E.D. La. July 17, 2020) (suggesting investigating officers may "provide an opinion as to the cause of the accident" if they did "witness the accident and" have "been designated as an expert witness").

But this case will be bench tried. Because there is no jury, there is no prejudice to weigh. *Fischer*, 2022 WL 36418, at *6. Still, the police report must be analyzed under the rule against hearsay.

**4.**

Hearsay is an out-of-court statement repeated in court to prove the truth of the matter asserted therein and is inadmissible with some exceptions. *See* FED. R. EVID. 801(c) and 802. The rule against hearsay does not apply to statements offered merely to show that they were made or had some effect on the listener. *See United States v. Gibson*, 675 F.2d 825, 833–34 (6th Cir. 1982).

Deputy Ramirez's police report is not inadmissible hearsay. The Government is not offering the report for the truth of the statements therein but to prove the effect that those statements had in leading Ramirez to draw his conclusion about who was at fault for this accident.

Even if Deputy Ramirez's police report is hearsay, it is admissible under the public-records exception, which provides that:

> A record or statement of a public office [is admissible] if it sets out the office's activities; a matter observed while under a legal duty to report, but not

> including, in a criminal case, a matter observed by law-enforcement personnel; or in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

FED. R. EVID. 803(8). The public-records exception allows such evidence because it generally is reliable and easy to authenticate.

The police report contains only matters that Ramirez personally observed: the statements that the parties gave him at the scene and his factual findings based on his personal observation of the post-accident scene. Although the latter must be analyzed separately, *see* FED. R. EVID. 805, Ramirez's observations and findings are admissible if Plaintiff "does not show that the source of information or other circumstances indicate a lack of trustworthiness," FED. R. EVID. 805(8)(B).

Plaintiff has not contested the trustworthiness of Deputy Ramirez's police report. *See generally* ECF No. 54. On the contrary, Plaintiff states that "[i]t is unquestionable that the UD-10 Michigan Traffic Crash Report that is the subject of this Motion is a report that was prepared in compliance with MCL 257.622." *Id.* at PageID.1376. Further, Ramirez did not create this report for a criminal investigation, so the usual indicia of officer bias are not present. Moreover, both parties gave their statements to Ramirez at the scene. *See* ECF No. 54-2 at PageID.1381. And the report was made soon after the accident occurred and is the only such record made that close in time to the accident. So even if there was some risk of prejudice—and there is not—it would be uncontestably outweighed by the evidence's unique probative value.

For these reasons, the police report is admissible under the public-record exception to the rule against hearsay. This finding is bolstered by ample controlling precedent. *See, e.g.*, *Dortch v. Fowler*, 588 F.3d 396, 402–05 (6th Cir. 2009) (finding the district court's admission of a police report to be "reasonable" despite the report's inconsistencies with testimony the authoring police officer gave "in his deposition and at trial"); *Baker v. Elcona Homes Corp.*, 588 F.2d 551, 554–59

(6th Cir. 1978) (upholding the district court's admission of a police report despite an improper analysis because the report did not have any indicia of unreliability and its author "was completely independent of both parties" when it was written).

**5.**

Although the parties did not brief this issue, the statements that Plaintiff and Patton made to Deputy Ramirez must be analyzed separately as hearsay within hearsay. *See Miller v. Field*, 35 F.3d 1088, 1090–92 (6th Cir. 1994) (reversing the district court for finding that statements from others that the authoring police officer included in a police report were not admissible under Rule 803(8)). Because those statements were made outside court, they must each satisfy one of the exceptions to the rule against hearsay to be admissible. FED. R. EVID. 805.

The police report reveals four statements that the parties made to Ramirez: (1) Driver of V2 stated he check his mirrors prior to making his turn into the residence; (2) Driver of V1 had noticed that V2 was slowing but thought he was delivering mail to the mailbox; (3) Driver of V1 stated he did not see the blinker until he was beside V2; (4) V1 tried giving the motorcycle throttle to go around V2 but lost control when he entered the gravel driveway. ECF No. 54-2 at PageID.1380–81.

Each of these statements satisfies the excited-utterance exception to the rule against hearsay, which allows any "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that is caused." FED. R. EVID. 803(2). An excited utterance is considered trustworthy because "circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication." FED. R. EVID. 803 advisory committee's note to proposed rules (citation omitted).

A hearsay statement is admissible under the excited-utterance exception if "(1) there [is] an event startling enough to cause nervous excitement; (2) the statement [is] made before there is an opportunity to contrive or misrepresent; and (3) the statement [is] made while the person [is] under the stress of the excitement caused by the event." *United States v. Beverly*, 369 F.3d 516, 539–40 (6th Cir. 2004).

All three elements are satisfied. Both parties were involved in a serious life-threatening accident, satisfying the first element. Although the excited-utterance exception "does not contain an explicit time limitation," *Maggard v. Ford Motor Co.*, 320 F. App'x 367, 373 (6th Cir. 2009) (unpublished), Ramirez spoke to Plaintiff and Patton at the scene soon after the accident in response to a 9-1-1 from a witness, ECF Nos. 36-3 at PageID.504; 36-5 at PageID.533. Although witnesses and first responders were present, there is no evidence suggesting either that the parties spoke to anyone until Deputy Ramirez arrived or that the parties' statements to Ramirez were inconsistent. *Maggard*, 320 F. App'x at 373 ("There is also absolutely no evidence in the record that anyone counseled her about how she should describe the accident or even that she discussed the accident in any detail with anyone . . . ."). Thus, there is no basis to infer that the parties had an opportunity to fabricate their statements, satisfying the second element. Plaintiff was so severely injured that he had to be medevaced to the nearest hospital. ECF No. 36-5 at PageID.537. Ramirez not only assisted the first responders but also spoke to them about Plaintiff's injuries. *Id.* Ramirez then spoke to Plaintiff, who "was in pain" during that conversation. ECF No. 27-4 at PageID.349. Ramirez next spoke to Patton, *id.* at PageID.350, who did not even move the postal truck until after Ramirez told him to move it, ECF No. 27-3 at PageID.340. Under these facts, the more reasonable inference is that Ramirez took the parties' reliable statements "well within the traumatic

range" of the startling event, satisfying the third element. *See United States v. Arnold*, 486 F.3d 177, 185 (6th Cir. 2007) (collecting cases).

Because the parties' statements written in Deputy Ramirez's police report satisfy the excited-utterance exception, the report is admissible in its entirety. Consequently, Plaintiff's Motion in Limine will be denied with prejudice.

**B.**

Plaintiff's second motion requests this Court to allow his expert witness to testify remotely via Zoom videoconferencing because "he lives in Texas." ECF No. 56 at PageID.1384. According to Plaintiff's Motion, the Government has not objected to the requested relief. *Id.*

This Court may grant Plaintiff's request "[f]or good cause in compelling circumstances and with appropriate safeguards . . . ." FED. R. CIV. P. 43(a). "Courts have held the distant location of witnesses and the challenges of travel during the global COVID-19 pandemic combined to present good cause in compelling circumstances for remote testimony." *House v. Players' Dugout, Inc.*, No. 3:16-CV-00594-RGJ, 2021 WL 4898071, at *13 (W.D. Ky. Oct. 20, 2021) (collecting cases). And Zoom videoconferencing affords adequate safeguards for such testimony, especially considering that the undersigned has presided over such testimony in other cases. *See Le v. Reverend Dr. Martin Luther King, Jr. Cnty.*, 524 F. Supp. 3d 1113, 1117–18 (W.D. Wash. 2021).

Because Plaintiff has established good cause in compelling circumstances and this Court can grant Plaintiff's request with adequate safeguards, Plaintiff's Motion will be granted, and Roger Allen may testify via Zoom videoconferencing.

### III.

Accordingly, it is **ORDERED** that Plaintiff's Motion in Limine to Exclude UD-10 Michigan Traffic Crash Report as Evidence at Trial, ECF No. 54, is **DENIED WITH PREJUDICE**.

Further, it is **ORDERED** that Plaintiff's Motion to Allow Roger Allen to Testify by Zoom at Trial, ECF No. 56, is **GRANTED**.

Dated: June 24, 2022                           s/Thomas L. Ludington
                                               THOMAS L. LUDINGTON
                                               United States District Judge